# In the United States Court of Federal Claims

No. 19-244C
(Filed: August 29, 2019)

```
* * * * * * * * * * * * * * * *
```

E&I GLOBAL ENERGY SERVICES, INC, and
E&C GLOBAL, LLC,

                *Plaintiffs*,

v.

THE UNITED STATES,

                *Defendant*.

```
* * * * * * * * * * * * * * * *
```

Contracts; partial motion to dismiss for lack of subject matter jurisdiction; failure to state a claim; RCFC 12(b)(1); RCFC 12(b)(6)

*Wayne Neville White, Jr.*, Denver, CO, for plaintiffs, with whom was *Joseph A. Whitcomb*.

*Christopher L. Harlow*, Trial Attorney, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, DC, with whom were *Joseph H. Hunt*, Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Patricia M. McCarthy*, Assistant Director, for defendant. *Thomas Cordova* and *Trevor Updegraff*, Western Area Power Administration, of counsel.

OPINION

BRUGGINK, *Judge*.

The United States, acting through the Department of Energy's Western Area Power Administration ("WAPA"), contracted with Isolux Corsan, LLC ("Isolux") in 2015 to construct a high voltage substation in South Dakota. That contract was terminated for default in 2016. Liberty Mutual Insurance Company and The Insurance Company of the State of Pennsylvania (collectively, the "Sureties") were the payment and performance sureties for Isolux's contract. Subsequently, WAPA, the Sureties, and plaintiffs E&I Global Energy Services and E&C Global, LLC

(hereafter "plaintiff" or "E&I") entered into a Tender Agreement and Follow-On contract on March 28, 2017 and April 13, 2017, that awarded E&I with Contract No. DE-WA0003661 for the completion of construction of the high voltage VT Hanlon Substation. E&I in effect agreed to complete the work Isolux had not finished. Contemporaneously, E&I and the Sureties, but not WAPA, also executed a Completion Agreement, which, among other things, set the payment procedures and time for completion.

Eventually WAPA terminated E&I for default. After plaintiff's claims under the Contract Disputes Act were denied, plaintiff filed its complaint in this court, seeking reimbursements for payments made to subcontractors and suppliers, breach of contract damages, and conversion of the default termination to one for convenience.

Pending before the court is defendant's April 12, 2019 partial motion to dismiss Counts 1–3 of plaintiff's complaint under Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"). Defendant argues that the court does not have subject-matter jurisdiction over these claims, either because plaintiff is not in privity of contract with the government or because aspects of the claims sound in tort. Defendant also argues, in the alternative, that plaintiff's allegations fail to state a claim.

The matter is fully briefed and oral argument was held on August 23, 2019. For the reasons explained below, we grant defendant's motion to dismiss Counts 1–3 of plaintiff's complaint for failure to state a claim.

BACKGROUND[1]

The United States, acting through WAPA, entered into Contract No. DE-WA0002620 with Isolux on September 28, 2015. Pursuant to this $9,982,018.80 contract, Isolux was responsible for providing all labor, materials, equipment, and other resources to complete construction of the high voltage VT Hanlon Substation in South Dakota. The Sureties issued a performance bond that guaranteed Isolux's performance and a payment bond that guaranteed Isolux's subcontractors and suppliers, each in the sum of $9,982,018.80.

After Isolux failed to complete construction, on December 2, 2016, WAPA terminated Isolux for default. On March 28, 2017, the Sureties tendered E&I as Completion Contractor through the Tender Agreement. WAPA accepted the Sureties' tender. The agreement was signed by all

---

[1] These facts are derived from the complaint and accompanying exhibits.

parties.

The Tender Agreement provides, among other things, that:

> Sureties hereby tender [E&I] to [WAPA], and [WAPA] accepts such tender to [E&I]. By execution of this Agreement, [WAPA] agrees to assume all obligations of Sureties, as applicable, under the Completion Agreement and will be entitled to all of the rights, remedies, and benefits of the Completion Agreement as it relates to [E&I]; provided, however, that the terms and conditions of Sections 3 and 16 of the Completion Agreement shall survive this tender of [E&I], such that the benefits and obligations of Sections 3 and 16 of the Completion Agreement shall remain with and continue to run to Sureties and shall not pass to [WAPA], regardless of anything provided for in this Agreement.

Pl.'s Ex. 2 ¶ 2.

Sections 3 and 16 referred to in the Tender Agreement appeared in the March 2017 Completion Agreement executed between the Sureties and E&I in satisfaction of the Sureties' performance bond. WAPA did not sign the Completion Agreement. Section 3 is not relevant for to the claims at issue in defendant's motion, but Section 16 states:

> [E&I] assumes all responsibility for any and all direct liabilities, claims, damages, losses, suites, and demands against Sureties with respect to (a) any work performed by a Subcontractor or Completion Contractor on the Project prior to this Agreement as a subcontractor to Principal, . . . [and] [E&I] shall not be responsible for paying sums due any of Principal's subcontractors or vendors with respect to materials ordered and/or work performed on behalf of the Principal prior to the date of this agreement . . . . The terms and conditions of this Section 16 shall survive a tender of this Agreement to [WAPA], such that the benefits of this Section 16 shall remain with and continue to run to Sureties and shall not pass to [WAPA].

Pl.'s Ex. 1 ¶ 16. During oral argument, the parties agree that the net effect of Section 16 is that the Sureties, and not E&I, were responsible for settling any outstanding amounts due to Isolux's suppliers and subcontractors.

3

The Completion Agreement also provided that E&I was prohibited from settling any third party claims without the Sureties' consent. *Id.* ¶ 17.

On April 13, 2017, E&I and WAPA executed the Follow-On contract, which incorporates the Tender Agreement by reference. The Follow-On contract awarded E&I Contract No. DE-WA0003661, terminated Contract No. DE-WA0002620, and required performance for the completion of work for a fixed price of $5,528,625.69. The Follow-On contract was signed by E&I and WAPA.

On April 20, 2017, WAPA hosted a VT Hanlon "kick-off" meeting with E&I, also referred to as the "pre-construction meeting," to discuss job-site expectations and the construction schedule. Pl.'s Ex. 5. E&I alleges that, prior to this meeting, it discovered that representations made by WAPA regarding equipment that Isolux had paid for were largely untrue. Compl. ¶ 20. Specifically, E&I realized that Isolux had failed to pay fully most of the subcontractors and suppliers, and that suppliers had canceled equipment orders made by Isolux. *Id.* At the pre-construction meeting, E&I raised its concerns regarding the missing equipment and other site issues with the Contracting Officer, Jonathan Dittmer. Compl. ¶ 21. E&I expected that each issue raised would have significant additional costs and schedule impacts but needed information from WAPA or Isolux to make a more accurate estimate. *Id.* E&I alleges that Mr. Dittmer stated: "We need to hurry and get the project moving. Any issues will be addressed as they come up." *Id.*

Despite language in the Completion Agreement prohibiting it from settling claims of suppliers and subcontractors without the Sureties' consent, E&I elected to pay Isolux's subs and materialmen for the missing equipment. Compl. ¶ 23. According to E&I, it did so in reliance on Mr. Dittmer's assurance that issues with subs and materialmen would be addressed "as they came up." These payments totaled $1,712,132.23. Compl. ¶ 36.

E&I completed much of the work it contracted to do, but as of February 2018, it was still complaining to WAPA about the agency's failure to reimburse it for the missing equipment. On February 17, plaintiff requested by email additional time to complete the work. Pl.'s Ex. 8. E&I's email also requested an additional $700,000 relating to twenty-nine invoices triggered by what it characterized as change orders from WAPA. *Id.* In response to this email, on April 6, 2018, WAPA sent a letter to E&I denying the request for a time extension and informing it that a Show Cause Notice had been issued. Pl.'s Ex. 11. The Show Cause Notice informed E&I that the contract performance period would expire on April 3, 2018, and that it appeared to WAPA, based on daily reports of the on-site inspector, that E&I

4

had effectively abandoned the work. Pl.'s Ex. 12 ¶ 1. On April 20, 2018, E&I responded to the Show Cause Notice via email stating that E&I had not abandoned the project and explaining that its inability to complete the project was due to factors beyond plaintiff's control. Compl. ¶ 32. On May 18, 2018, WAPA terminated Contract No. DE-WA0003661 in its entirety for default. Pl.'s Ex. 14 ¶ 1. The stated reason for termination was E&I's failure to complete the project within the time specified in the contract. *Id ¶ 2.*

On October 1, 2018, E&I sent a certified Contract Disputes Act claim to WAPA asking the agency to rescind the termination for default, make schedule adjustments, convert the termination to one for convenience, and pay E&I certain specified amounts.[2] Pl.'s Ex. 15. The contracting officer denied E&I's claims in their entirety on December 17, 2018. Pl.'s Ex. 16. Subsequently, on February 12, 2019, E&I filed its complaint here challenging the contracting officer's decision.

## DISCUSSION

The complaint sets out five causes of action in five counts: Count I alleges a breach of the implied duty of good faith and fair dealing; Count II alleges fraudulent inducement to contract; Count III alleges misrepresentation or concealment in the formation of the contract; Count IV alleges breach of contract; and Count V asserts wrongful contract termination. The common denominator in the first three counts is that each assumes that WAPA is obligated to reimburse E&I $1.7 million for amounts plaintiff paid Isolux's subcontractors and materialmen. The government seeks to dismiss these counts. It argues that WAPA is not in privity with plaintiff with respect to all three contracts, or that, even if the parties are in privity, the contract obligations do not involve reimbursement of Isolux's obligations. It contends that WAPA's obligations under the Tender Agreement and Follow-On contract specifically exclude any obligation of reimbursement and that any other theory of recovery would sound in tort. The government's principal argument is that these are jurisdictional defects prompting dismissal pursuant to RCFC 12(b)(1). Alternatively, the government argues that the same three counts should be dismissed for failure to state a claim because the contractual relationship between WAPA and E&I did not obligate the agency to pay reimbursement claims.

In deciding a motion to dismiss for lack of subject-matter jurisdiction, the court takes the undisputed facts alleged in the complaint as true and draws reasonable inferences in plaintiff's favor. *Trusted Integration, Inc. v. United*

---

[2] The total amount of E&I's claim is $3,605,289.80. Compl. ¶ 36.

5

*States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). The party bringing an affirmative claim, however, bears the burden of establishing the court's jurisdiction by a preponderance of evidence. *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936); *Trusted Integration, Inc.* 659 F.3d at 1163. If defendant challenges the facts supporting jurisdiction, we "look to the true nature of the action in determining the existence or not of jurisdiction." *Katz v. Cisneros*, 16 F.3d 1204, 1207 (Fed. Cir. 1994). In deliberating a motion to dismiss for lack of subject-matter jurisdiction, the court may consider relevant material beyond the complaint to determine whether it has jurisdiction. *McNutt*, 298 U.S. at 189; *Moyer v. United States*, 190 F.3d 1314, 1318 (Fed. Cir. 1999). In this case, plaintiff has attached all the contract-related materials to the complaint, and we take them into consideration.

If we find jurisdiction, the court must then consider whether the plaintiff has stated any claims upon which relief can be granted. To survive a motion under RCFC 12(b)(6), plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Rather, "the complaint must allege facts 'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief." *Cary v. United States*, 552 F.3d 1373, 1376 (Fed. Cir. 2009) (quoting *Twombly*, 550 U.S. at 557).

    A.  Tucker Act & Privity of Contract

This complaint arises from the Contract Disputes Act of 1978, 41 U.S.C. § 605(c)(1) (2011) ("CDA"), which vests jurisdiction in this court under the Tucker Act. *See* 28 U.S.C. § 1491 (2012). The Tucker Act confers jurisdiction upon the United States Court of Federal Claims and waives sovereign immunity with respect to specific types of monetary claims against the United States. *United States v. Mitchell*, 463 U.S. 206, 212–13 (1983). To maintain a cause of action pursuant to the Tucker Act, however, there must be a contract between the plaintiff and the government. *Cienega Gardens v. United States*, 194 F.3d 1231, 1239 (Fed. Cir. 1998) (citations omitted). Plaintiff must also establish its right to "actual, presently due money damages from the United States." *U.S. v. King*, 395 U.S. 1, 3 (1969).

Generally, the "government consents to be sued only by those with whom it has privity of contract." *Erickson Air Crane Co. v. United States*, 731 F.2d 810, 813 (Fed. Cir. 1984); *Cienega Gardens v. United States*, 194 F.3d 1231, 1239 (Fed. Cir. 1998) ("The effect of finding privity of contract between a party and the United States is to find a waiver of sovereign immunity."). In the absence of privity, the government has not consented to

be sued, and thus the plaintiff lacks standing, a threshold jurisdictional matter and amenable to a motion to dismiss under RCFC 12(b)(1).

Plaintiff was not in privity with the United States under the Completion Agreement, but it plainly was in privity with WAPA under the Tender Agreement and the Follow-On contract, and it is those contracts that plaintiff contends created a right to reimbursement. In short, we view the government's motion to dismiss under RCFC 12(b)(1) as largely[3] misdirected. Privity exists, and the court thus has subject-matter jurisdiction to interpret these contracts. The question, under RCFC 12(b)(6), is whether the asserted obligations exist. Because, for reasons set out below, we conclude that the documents attached to the complaint demonstrate there is no contractual obligation of reimbursement, Counts I, II, and III cannot proceed on a contract theory.

### B. Failure to State a Claim Upon Which Relief Can be Granted

As counsel conceded during oral argument, plaintiff makes no claim in Counts I, II, or III that it was not paid for any of the specific Contract Line Items it contracted to perform under any of the three contracts involved. Plaintiff nevertheless alleges that WAPA's obligation to reimburse it for amounts paid to Isolux's creditors arose when it "assumed all of Liberty Mutual's obligations when it signed the Tender Agreement on March 28, 2017." Compl. ¶ 26. However, WAPA did not assume any responsibilities related to Isolux's creditors in the Tender Agreement, which, as explained above, explicitly excluded WAPA from such obligations; those obligations remained with the Sureties. Pl.'s Ex. 2 ¶ 2 ("the benefits and obligations of Sections 3 and 16 of the Completion Agreement shall remain with and continue to run to Sureties and shall not pass to [WAPA]"). Although the Sureties were responsible for these payments, plaintiff chose to ignore that language and the prohibition against making such payments without the Sureties' consent and "paid for the missing equipment, and paid the subcontractors for amounts due from Isolux," relying on the contracting officer's assurances that "any issues [would] be addressed as they come up." Compl. ¶ 23. We conclude that plaintiff was a volunteer. It chose to proceed in the absence of any contractual expectation of reimbursement from WAPA.

Nor does plaintiff's recharacterization of what is basically a claim for breach of contract into assertions of bad faith, misrepresentation, or fraud

---

[3] As we also explain below, to the extent plaintiff is asserting an independent claim for fraud or misrepresentation, such a claim would indeed be beyond our jurisdiction.

7

help it. Count I asserts the breach of the covenant of good faith and fair dealing. The implied duty of good faith and fair dealing "imposes obligations on both contracting parties that include the duty not to interfere with the other party's performance and not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract." *Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005). As E&I and WAPA are contracting parties to both the Tender Agreement and the Follow-On contract, the implied duty of good faith and fair dealing applies. Nevertheless, we grant the motion to dismiss Count I under RCFC 12(b)(6). There is no contract provision to which such a covenant could attach; indeed the contract language forecloses such an argument. Nor does plaintiff allege that the government interfered with its expectations under the affirmative contract provisions or that it kept plaintiff from performing its own obligations.

In its response brief, plaintiff characterizes the government's breach of good faith as a failure to disclose its superior knowledge concerning Isolux's failure to pay its subs and materialmen. It is true that the doctrine of superior knowledge "imposes upon a contracting agency an implied duty to disclose to a contractor otherwise unavailable information regarding some novel matter affecting the contract that is vital to its performance." *Canpro Invs. Ltd. v. United States*, 130 Fed. Cl. 320, 335 (2017) (citations omitted). This doctrine is generally applied where:

> (1) a contractor undertook to perform without vital knowledge of a fact that affects performance costs or duration; (2) the government was aware the contractor had no knowledge of and had no reason to obtain such information; (3) any contract specification supplied misled the contractor or did not put it on notice to inquire; and (4) the government failed to provide the relevant information.

*Giesler v. United States*, 232 F.3d 864, 876 (Fed. Cir. 2000) (citations omitted).

Plaintiff alleges that WAPA knew or should have known that Isolux failed to pay its subcontractors in full and failed to pay for several equipment items that E&I was required to incorporate into the VT Hanlon Substation per its prime contract with WAPA. Compl. ¶ 42. Plaintiff also alleges that WAPA's termination contracting officer failed to promptly complete audit reviews of the Isolux contract pursuant to 48 C.F.R § 49.101(d) of the Federal Acquisition Regulations ("FAR") and failed to perform certain duties regarding termination inventory pursuant to FAR 49.105(b)(4), (c)(8). *Id.* If

WAPA had been more diligent in asserting the government's rights in connection with Isolux, in other words, WAPA would have known that there was a potential trap for plaintiff. Plaintiff argues that WAPA's failure to share its omissions with E&I prior to the execution of the Completion Agreement, Tender Agreement, and Follow-On contract amounted to a breach of its duty not to withhold superior knowledge. *Id*. ¶ 43.

Presumably, if WAPA neglected to inventory the defaulted contract, it would not have had the information necessary to better inform plaintiff. In any event, the government is under no obligation to engage in an exercise of self-criticism prior to securing a follow-on contractor. The government's rights and obligations under the termination clauses related to Isolux and do not run to E&I's benefit. Plaintiff does not allege any affirmative misrepresentations in this regard. We do not consider plaintiff's election to move forward on the assurance that the contracting officer would "address issues as they come up" as a misrepresentation or an enforceable promise to reimburse.[4]

Plaintiff's arguments also run directly counter to the contract language. It contends that the Tender Agreement was misleading and created an expectation that it would be reimbursed, but then quotes from Section 6: "Sureties will continue to fulfill their obligations under the Payment Bond and pay only those valid claims made on same." Pl.'s Resp. ¶ 39. Plaintiff explains that this language "would lead any reasonable contractor to believe that it would not be responsible for paying outstanding sums due to subcontractors and suppliers from the prior terminated contract." *Id.* As defendant point out, this argument answers itself. A reasonable contractor reading this language would not be lulled into making payments to prior subcontractors. Indeed the Completion Agreement forbids such unilateral claim settlement. Thus, as defendant correctly states, even if WAPA violated the FAR, the contract documents unambiguously made the Sureties responsible for Isolux's debt and prohibited E&I from settling these claims.

As defendant further points out, plaintiff's clear understanding of the contract prevents E&I from establishing a necessary element of its claim– that the contract documents were misleading. As such, pursuant to RCFC 12(b)(6), Count I is dismissed for failure to state a claim upon which relief can be granted.

This same analysis also dictates dismissal of Count II, which alleges

---

4 We note as well that the only representation on which plaintiff relies appears to have occurred after the contracts were signed.

a fraudulent inducement to contract, and Count III which alleges misrepresentation or concealment in the formation of the contract. Fraud and misrepresentation normally would not be proper assertions for grounding a contract claim. Such allegations sound in tort, a species of claim over which the court does not have jurisdiction.[5] Nevertheless, it is possible to breach a contract by committing fraud or by making misrepresentations.[6] The facts asserted here, however, preclude such claims.

In Counts II and III of the complaint, plaintiff primarily relies on the assertion, addressed above, that WAPA had superior knowledge that the agency should have shared with E&I or the Sureties. Compl. ¶¶ 48–9. Similarly, plaintiff alleges that defendant's "fraud and misrepresentations relate to the contracting officer's failure to . . . obtain[] critical knowledge of overpayments to the terminated contractor Isolux . . . and [identify] what equipment and supplies were available to [E&I]" for performance under the Follow-On contract. Pl.'s Resp. ¶ 64. Essentially, Counts I through III are grounded in the same assertions, but as we explain above, the facts alleged are inconsistent with fraud or misrepresentation. To the extent that any allegations survive the motion under RCFC 12(b)(1), therefore, they must be dismissed under RCFC 12(b)(6).

---

[5] Generally, this court lacks jurisdiction over tort claims against the United States. 28 U.S.C. § 1491(a)(1) ("The United States Court of Federal Claims shall have jurisdiction . . . in cases not sounding in tort."). Moreover, "[i]t is well-established an allegation of fraud is a tort claim." *Kemper v. United States*, 138 Fed. Cl. 1, 19 (2018) (citations omitted); *Aetna Cas. and Sur. Co. v. United States*, 228 Ct. Cl. 146, 655 (1981) (holding that fraudulent misrepresentation and inducement are tort claims "expressly beyond our Tucker Act jurisdiction").

[6] In *Awad v. United States*, 301 F.3d 1367, 1372 (Fed. Cir. 2002), the United States Court of Appeals for the Federal Circuit held that "[w]here [a] tort claim stems from breach of contract, [the] cause of action is ultimately one arising in contract, and thus is properly within the exclusive jurisdiction [of this Court]." *L'Efant Plaza Props., Inc. v. United States*, 227 Ct. Cl. 1, 9 (1981) (holding that for this principle to apply "there must be a 'tortious' breach of contract rather than tort independent of the contract.") (citations omitted). In ruling in favor of the government, the court in *L'Efant* noted that the plaintiff was unable to show a connection between the alleged misrepresentations and fraud and any contractual obligations owed by the government. *Id.* The same is true here.

CONCLUSION

    For the reasons stated above, we grant defendant's motion to dismiss Counts 1–3 of plaintiff's complaint pursuant to RCFC 12(b)(6) for failure to state a claim upon which this court can grant relief.

                                                       <u>s/Eric G. Bruggink</u>
                                                       ERIC G. BRUGGINK
                                                       Senior Judge