# In the United States Court of Federal Claims

No. 19-244C
Filed: February 22, 2021

**E&I GLOBAL ENERGY SERVICES, INC., et al.,**

        *Plaintiffs*,

v.

**THE UNITED STATES,**

        *Defendant.*

*Joseph Whitcomb*, Whitcomb, Selinsky, P.C., Denver, CO, for Plaintiff.

*Christopher L. Harlow*, Trial Attorney, *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., with whom were *Thomas Cardova*, and *Trevor Upderaff*, Western Area Power Association, Denver, CO, of counsel, for Defendant.

## MEMORANDUM OPINION AND ORDER

**TAPP, Judge.**

    Today the Court again confronts what has been described as "one of the more popular indoor courthouse sports," the recurring issue of when and under what circumstances a court should reconsider an interlocutory order. *Westport Ins. Corp. v. Stengel*, 571 F. Supp. 2d 737, 738 (E.D. Tex. 2005) (quoting *Louisiana v. Sprint Comms. Co.*, 899 F. Supp. 282, 284 (M.D. La. 1995)). Most vexing here is the inconsistent interpretation of the ambiguous provisions of RCFC Rules 54 and 59 which, though similar to their counterparts within the federal civil rules, are treated quite differently. Though the application of this doctrine is fact-specific, the boundaries of these rules demand a uniform demarcation, a destination thus far unreachable.

    Before the Court are two motions urging the Court to reconsider three separate Orders. Plaintiff, E&I Global Energy Services, Inc. ("E&I"), argues that information obtained in the deposition of Contracting Officer Jonathan Dittmer merits reconsideration of three decisions of this Court: (1) Judge Bruggink's August 29, 2019 Opinion dismissing three counts of E&I's Complaint; (2) the Court's February 25, 2020 Order denying E&I's motion for leave to amend its Complaint; and (3) its June 24, 2020 Order denying E&I's motion to compel discovery. However, for the reasons that follow, and even accounting for the ever-shifting sands of RCFC Rules 54 and 59, reconsideration of these decisions is not warranted. E&I's motions for reconsideration (ECF Nos. 47 & 48) are **DENIED**.

## I. Procedural History

A prior reported decision from this Court lays out the pre-litigation factual and procedural history of this case in greater detail. *See E & I Glob. Energy Servs., Inc. v. United States*, 144 Fed. Cl. 508 (2019). Because E&I's dual motions for reconsideration reach to the bottom of the docket in its attempt to reverse decisions the Court has revisited numerous times, the Court feels that this chronological recitation is necessary to illuminate the context of its decision.

This is a Contract Disputes Act ("CDA") case involving a contract for construction of a high-voltage substation in South Dakota. *Id*. at 510. The U.S. Department of Energy's Western Area Power Association ("WAPA") originally contracted with Isolux Corsan, LLC ("Isolux"), but Isolux defaulted in 2016. *Id*. Through an agreement with the project's Sureties,[1] E&I, a subcontractor for Isolux, agreed to assume responsibilities as the prime contractor for completion of the substation. *Id*. As part of that contract, E&I agreed to complete construction of the substation in satisfaction of the Sureties' performance bond obligations, and the Sureties would remain responsible to pay Isolux's subcontractors and creditors. *Id*. at 510–11. This latter fact is crucial. WAPA issued a conditional notice for E&I to begin construction in May 2017 and reminded E&I that the deadline to complete construction was April 9, 2018. *E & I Glob. Energy Servs.*, 144 Fed. Cl. at 511–12. E&I failed to complete construction and WAPA terminated it for default in May 2018. *Id*. at 512.

E&I submitted a certified CDA claim seeking damages, including reimbursement for payments E&I made to Isolux's subcontractors and vendors. *Id*. The Contracting Officer denied that claim. *Id*. Believing that the decision was incorrect and not in compliance with the Federal Acquisition Regulations ("FAR"), E&I initiated this suit. E&I's five-count Complaint alleged: (1) breach of the covenant of good faith and fair dealing; (2) fraudulent inducement; (3) misrepresentation/concealment; (4) breach of contract; and (5) wrongful termination of contract. *Id*.

In ruling for the United States on its Motion to Dismiss under RCFC 12(b)(6), the Court (Bruggink, J.) dismissed Counts I–III on the basis that those Counts went to E&I's misbelief that it was entitled to reimbursement for payments it made to Isolux's subcontractors and vendors. The Court dismissed Count I because there was no contractual provision to which the covenant of good faith and fair dealing could attach, and further, E&I did not allege that the United States interfered with E&I's expectations or ability to perform. *E & I Glob. Energy Servs.*, 144 Fed. Cl. at 514. In dismissing Counts II & III, the Court held that E&I's "clear understanding of the contract prevents E & I from establishing a necessary element of its claim—that the contract documents were misleading." *Id*. at 515. The Court did not direct the Clerk to enter Judgment for the United States on those Counts and thus the decision remains interlocutory.

---

[1] Liberty Mutual Insurance Company and The Insurance Company of the State of Pennsylvania will be collectively referred to as "the Sureties."

After dismissal of Counts I–III on August 29, 2019, the Court entered a Scheduling Order directing the parties to complete fact discovery by September 1, 2020. (Sched. Order, ECF No. 19). One month later, the Chief Judge transferred this case to the undersigned. (*See* Notice of Reassignment, ECF No. 21). Shortly after that reassignment, E&I filed a Motion to Amend its Complaint. (Mot. to Am. Pleadings, ECF No. 23). In that Motion, E&I sought to add three Counts: "(1) Breach of Contract – Cardinal Change/Constructive Change; (2) Commercial Impracticability; and (3) Unfair Trade Practices." (Memo in Supp. of Mot. to Am. at 2, ECF No. 23-1).

The Court ruled that each of the proposed amendments was futile because the theories on which each count relied were contrary to the prior decision of this Court in *E & I Glob. Energy Servs.* which relied heavily on the uncontested fact that Isolux's sureties, not E&I, would remain responsible to pay Isolux's subcontractors and creditors. (Order Denying Pl.'s Mot. to Am. at 2–3, ECF No. 29). For example, Proposed-Count (1) relied on the theory that WAPA unilaterally shifted the burden of cost onto E&I, but the Court had previously concluded that E&I *voluntarily* made those payments to subcontractors and vendors. (*Id*. at 2). Proposed-Count (2) relied on the theory that it would be commercially impractical for E&I to remain on the follow-on contract because the costs were "excessive and unreasonable[.]" (*Id*. at 3). Putting aside that commercial impracticability is a defense to breach of contract, not an affirmative claim for relief, the Court explained that to invoke the doctrine, "the occurrence of the event which gives rise to the impracticability cannot be the fault of the plaintiff. . . . Here, the impracticality of performance arose from the Plaintiffs' voluntary payment of Isolux's debts" and thus the amendment would be futile as unable to survive a motion to dismiss. (*Id*.). Proposed-Count (3), asserting unfair trade practices, was legally dubious as asserted against the United States (*see id*. at n. 1), and relied on a theory of misrepresentation that the Court had expressly rejected because under no set of facts could E&I establish it was misled given its admitted understanding of its contractual obligations and prohibitions. (*Id*. at 3–4). Based on this reasoning, the Court denied E&I leave to amend its Complaint.

The parties presumably continued discovery. In late June, E&I filed a Motion to Compel Discovery (Pl.'s Mot. to Compel, ECF No. 30), seeking responses and documents related to the contract between WAPA and Isolux. E&I sought communications between WAPA and the Sureties and documents related to Isolux's failure to pay its subcontractors and vendors—all pre-dating the contract between E&I and WAPA—as well as admissions regarding WAPA's disclosures to E&I about events that pre-dated the contract. In objecting to production, the United States queried how, under RCFC 26(b)(1), these matters could be relevant to E&I's remaining claims of breach of contract and wrongful termination. In its motion, E&I provided only vague examples of what it sought to compel and surprisingly did not file a reply to the United States' brief in opposition to compulsion. (*See* Order Denying E&I's Mot. to Compel at 2, ECF No. 34). In its Order on E&I's motion, the Court noted this opacity and highlighted that E&I's motion relied on an incorrect recitation of the discovery rules and inapplicable case law. (*Id*.). Putting aside those defects, the Court explained that for prior contracts to be relevant in a breach of contract action, they must be between the same parties as the instant suit. (*Id*. at 3). As for the other discovery items, the Court determined that E&I sought those items to support its dismissed claims, and the requested items were not otherwise relevant to E&I's viable claims. (*Id*. ("E&I does not sufficiently connect its Isolux discovery requests to allegations in its

3

remaining claims for breach of contract and wrongful termination.")). The Court denied E&I's Motion to Compel on those grounds. (*Id*. at 4).

On August 31, 2020, the day before fact discovery was scheduled to conclude, E&I filed a motion to extend the discovery period by approximately two months until October 30. (Pl.'s Mot. for Enlargement of Fact Disc., ECF No. 35). E&I argued that the COVID-19 pandemic had impacted the regular operations of E&I's counsel's law office and more time was necessary to take depositions, thereby warranting an enlargement. (*Id*.). However, in noting the United States' opposition to an extension of fact discovery, E&I stated that the United States found E&I's request to be "other than credible[.]" (*Id*.). The Court held a hearing to evaluate the need to extend the fact discovery period, (*see* ECF No. 36), and ultimately denied E&I's request. (Order Denying Mot. for Extension of Time, ECF No. 41). After learning that the sole purpose of additional depositions would be to gather information for multiple motions for reconsideration, the Court reasoned that an extension was unwarranted. (*Id*. at 2). Despite E&I's argument that just days before it had become aware of information through the deposition of Contracting Officer Johnathan Dittmer, the Court determined that "E&I [had] failed to clarify how additional time to complete discovery would uncover information relevant to its surviving claims." (*Id*. at 3). Further, the Court found that E&I's failure to take Dittmer's deposition was "an error of strategy, and the justification E&I [had] provided [did] not demonstrate 'good cause' for an enlargement of the discovery period." (*Id*.).

Nearly three months later, after the United States filed a Motion for Partial Summary Judgment, E&I sought an extension to file a Response. E&I cited the need to first file multiple motions for reconsideration to obtain discovery the Court had already denied and to reinstate claims the Court had dismissed. E&I also sought to add amended claims the Court had denied as futile. (Pl.'s Sec. Mot. for Extension of Time, ECF No. 43). The Court denied this request, noting that it had been some time since E&I had first proposed filing multiple motions for reconsideration and the request contemplated numerous additional delays. (Order Denying Pl.'s Sec. Mot. for Extension of Time, ECF No. 45). The Court also cautioned E&I that motions for reconsideration were disfavored and were not a mechanism that should be used as an additional chance to sway the Court. (*Id*.).

E&I now moves for reconsideration of issues the Court has considered at multiple junctures and rebuffed in each instance. Perhaps illustrating Churchillian persistence,[2] E&I has repeatedly pressed the Court to consider issues extraneous to the path of this breach-of-contract litigation, to reconsider decided issues, and to extend deadlines so that it may press for

---

[2] Winston Churchill once advised then-Prince Edward VIII of Wales that "[i]f you have an important point to make, don't try to be subtle or clever. Use a pile driver. Hit the point once. Then come back and hit it again. Then hit it a third time – a tremendous whack." *See* James C. Freund, *Legal Ease* 161 (1984).

documents related to a contract to which E&I was not a party and pertaining to legal theories expressly rejected by the Court.[3]

Against the backdrop of this arduous recitation of the procedural history in this case, the Court turns to the substance of E&I's motions for reconsideration.

## II. Discussion

Before turning to the substance of E&I's motions for reconsideration, the Court will attempt to clarify the rule that permits such a motion.

### A. *Motions for Reconsideration of Interlocutory Decisions must be brought under RCFC 54(b), not RCFC 59(a).*

E&I brings its First Motion for Reconsideration under RCFC 59, urging the Court to reconsider its Order Denying E&I's Motion to Compel, (ECF No. 34). (Pl.'s First MTR at 5, ECF No. 47). However, E&I moves under the wrong rule. RCFC 54(b) governs reconsideration of interlocutory decisions, while RCFC 59 governs reconsideration of decisions after Judgments. Although the Court believes this motion should have been brought under RCFC 54(b), it recognizes that there is diversity of opinion among the judges of this court as to which Rule applies to motions for reconsideration of interlocutory decisions. The varied approaches to resolving interlocutory issues of reconsideration can be illustrated by referring to three cases.

Most recently, in *BHB Ltd. P'ship v. United States*, __ Fed. Cl. __, 2021 WL 222815 (Fed. Cl. Jan. 22, 2021), the court held that RCFC 54(b) pertained only "to matters in cases in which partial judgments either have been, or could be, entered." In the view of the *BHB* court, "Rule 54(b) contains no independent standard of review for matters to be reconsidered," thus it cannot be "the governing rule for the reconsideration of evidentiary and case management orders." *Id*. at *2. In that case, the court denied a motion to reconsider a previous interlocutory order on the basis that it was improperly brought under RCFC 54(b). *Id*.

At the opposite end of the spectrum, in *L-3 Commc'ns Integrated Sys., L.P. v. United States*, 98 Fed. Cl. 45 (2011), a different judge of this court applied RCFC 54(b) in reconsidering a motion to supplement the administrative record. In that case, the judge held that when a party "seek[s] reconsideration and/or clarification of an interlocutory decision and the merits of [the action] have not yet been addressed, [RCFC 54(b)] governs instead of Rule 59(e) or 60, which address reconsideration of final judgments." *Id*. at 48.

---

[3] The Court notes that E&I currently has related litigation pending against one of the Sureties in the United States District Court for the District of South Dakota. *E&I Global Energy Services, Inc. et al v. Liberty Mutual Surety Co.*, Case No. 4:20-cv-4033-KES (D.S.D. Feb. 21, 2020). The United States suggests, and E&I does not deny, that through that course of litigation, E&I has already received the documents it continues to seek to compel in this case. (Def.'s Combined Resp. at 6, ECF No. 51; Pl.'s Combined Reply at 3, ECF No. 52).

As if the disparity between these two extremes was not enough, a third approach to this issue exists. In *Wolfchild v. United States*, 68 Fed. Cl. 779 (2005), an Indian trust case, the court evaluated a motion to reconsider an interlocutory decision. In that case, the judge reasoned that because the decision was interlocutory, "the government's motion for reconsideration falls under RCFC 54(b) *and* RCFC 59(a), rather than under the more rigorous standards of RCFC 59(e)." *Id*. at 784 (emphasis added). The court ultimately determined that "[a]t an interlocutory stage, the common law provides that the court has power to reconsider its prior decision on any ground consonant with application of the law of the case doctrine." *Id*. at 785.

In this matter, the Court supplies a simpler methodology: RCFC 54(b) applies to reconsideration of interlocutory decisions, while the more rigorous RCFC 59(a) & (e) apply to reconsideration of matters for which Judgment has been entered. This formula is supported by the language of the Rules, which is admittedly confusing, and by the analogous civil rules and the approach of our sister district courts.

RCFC 59(e) is fairly straightforward:

> **(e) Motion to Alter or Amend a Judgment.** A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.

Its application to post-judgment motions seems to be well-accepted. *Maxus Energy Corp. & Subsidiaries v. United States*, 31 F.3d 1135, 1139 (Fed. Cir. 1994) ("[A]ny motion made within ten days of entry of judgment which seeks a substantive change in the judgment will be considered a [FRCP] 59(e) motion."); *Progressive Indus., Inc. v. United States*, 888 F.3d 1248, 1253 n. 4 (Fed. Cir. 2018) (finding that "RCFC 59(e) is identical to Rule 59(e) of the [FRCP]"). Thus, no discussion is needed.

RCFC 59(a)(1) is more problematic. It purports to offer three grounds for "grant[ing] a new trial or motion for reconsideration on all or some of the issues[.]" Those three grounds are:

> **(A)** for any reason for which a new trial has heretofore been granted in an action at law in federal court;
>
> **(B)** for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court; or
>
> **(C)** upon the showing of satisfactory evidence, cumulative or otherwise, that any fraud, wrong, or injustice has been done to the United States.[4]

RCFC 59(a)(1).

---

[4] The inconsistent application of Rules 54(b) and 59(a)(1) and (e) invites attention from the Court's Rules Committee. Does "the United States" refer to the Court or the party-defendant? Another point of interest for the Rules Committee.

The second part of the Rule—RCFC 59(b)—imposes time limits to bring motions under the first part of the Rule. The undersigned's interpretation—that Rule 59 applies only to motions for reconsideration after Judgment—is supported by RCFC 59(b)(1), which imposes a 28-day time limit "*after the entry of judgment*" to seek reconsideration under RCFC 59(a)(1)(A) and (a)(1)(B). (emphasis added). This interpretation is further supported by RCFC 59(b)(2), which contemplates a motion for staying "payment of judgment" in conjunction with a motion for reconsideration under RCFC 59(a)(1)(C). Given that language, RCFC 59(b) presupposes that a Judgment has been entered in the case for which a party seeks reconsideration under RCFC 59(a).

RCFC 54(b) comprises two principles. The first sentence provides for final judgment against fewer than all claims or parties in the court's discretion. The term "judgment" is specifically defined: "'Judgment' as used in these rules includes a decree and any order from which an appeal lies." Importantly, the second sentence omits entirely any reference to a "judgment." It provides that:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

That omission is dispositive. The text of the second sentence of RCFC 54(b) provides the clearest indication that it encompasses all interlocutory orders and decisions, "however designated," that do not trigger a judgment. Opponents of this approach may point to Rule 54's title, which reads "Judgment; Costs[,]" and compare it to Rule 59's title, which reads "New Trial; Reconsideration; Altering or Amending a Judgment[.]" However, titles may summarize but not contradict the statutes or rules that follow. *See Intel Corp. v. Advance Micro Devises, Inc.*, 542 U.S. 241, 256 (2004) (noting that statute captions cannot "undo or limit" text of statute) (quoting *Trainmen v. Baltimore & Ohio R. Co.*, 331 U.S. 519, 529 (1947)).

This interpretation, utilizing RCFC 54(b) for interlocutory matters and Rule 59 exclusively for decision that trigger final judgments, would align this Court with the rest of the federal judiciary. While FRCP 59(a) and RCFC 59(a) widely diverge, FRCP 54(a), (b) and RCFC 54(a), (b) are nearly identical. *Compare* FRCP 54(b) ("When an action presents more than one claim for relief—whether as a claim, counterclaim, *crossclaim,* or third-party claim") (emphasis added) *with* RCFC 54(b) ("When an action presents more than one claim for relief—whether as a claim, counterclaim, or third-party claim"). In interpreting the RCFC, the Federal Circuit has encouraged this Court to interpret comparable rules uniformly with their counterparts in the FRCP. *Kraft, Inc. v. United States*, 85 F.3d 602, 605 n. 6 (Fed. Cir. 1996), *opinion modified on denial of reh'g,* 96 F.3d 1428 (Fed. Cir. 1996) ("The precedent interpreting the Federal Rules of Civil Procedure applies with equal force to the comparable Rules of the Court of Federal Claims.").

Other federal courts have found that FRCP 54(b) applies to interlocutory decisions. *See, e.g., Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017) ("Compared to motions to reconsider *final* judgments pursuant to [FRCP 59], Rule 54(b)'s approach involves broader

flexibility to revise *interlocutory* orders before final judgment as the litigation develops and new facts or arguments come to light.") (emphasis in original); *Cobell v. Jewell*, 802 F.3d 12, 25 (D.C. Cir. 2015) (finding that since judgment had not been entered with respect to the order denying fees, to which plaintiff moved for reconsideration, that "decision was interlocutory and thus the reconsideration motion should have been treated as filed under Rule 54(b)."). This distinction matters because under RCFC 59(a), "[m]otions for reconsideration must be supported by a showing of *extraordinary circumstances* which justify relief." *Caldwell v. United States*, 391 F.3d 1226, 1235 (Fed. Cir. 2004) (internal citations and quotations omitted) (emphasis added). Before highlighting the practical effects of that heightened scrutiny, the Court looks to the source of the confusion between Rules 54(b) and 59(a).

*Fla. Power & Light Co. v. United States*, 66 Fed. Cl. 93 (2005) is often cited as the seminal case on motions for reconsideration in the Court of Federal Claims.[5] In that case, the Court concisely stated that "Rule 54(b) governs non-final orders such as dismissals of counts. To apply final order review standards to non-final orders would undermine both the common law and RCFC 54 which explicitly states that non-final orders may be revisited at any time." *Id*. at 97. The Court further reasoned that "[w]ith respect to decisions that are not final judgments, the law of the case doctrine applies." *Id.* at 95; *see also Wolfchild*, 68 Fed. Cl. at 784–85 (at the "interlocutory stage, the common law provides that the court has power to reconsider its prior decision on any ground consonant with application of the law of the case doctrine.").

The law of the case doctrine dictates that "[o]rderly and efficient case administration suggests that questions once decided not be subject to continued argument but the court has the power to reconsider its decisions *until a judgment is entered*." *Exxon Corp. v. United States*, 931 F.2d 874, 877 (Fed. Cir. 1991) (emphasis added). Thus, the Court's discretion under the law of the case doctrine, and RCFC 54(b), is vast. "While the threshold for reconsideration under RCFC 54(b) is imprecise, it certainly 'leaves within [its] ambit . . . a good deal of space for the Court's discretion.'" *Martin v. United States*, 101 Fed. Cl. 664, 671 (2011), *aff'd sub nom. Fournier v. United States*, No. 2012-5056, 2012 WL 6839784 (Fed. Cir. Nov. 27, 2012) (quoting *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004)). Even among other federal courts, which have long ago settled the rules-rivalry still flourishing in the Court of Federal Claims, there is no uniform standard for evaluating a motion to reconsider under Rule 54(b). *See Norton*, 224 F.R.D. at 272 ("Other courts apply a variety of different standards when confronted with a motion for reconsideration under Rule 54(b)"); *see also Moore v. Hartman*, 332 F. Supp. 2d 252 n. 7 (D.D.C. 2004) (surveying various standards).

---

[5] "Court of Federal Claims decisions, while persuasive, do not set binding precedent for separate and distinct cases in that court." *W. Coast Gen. Corp. v. Dalton*, 39 F.3d 312, 315 (Fed. Cir. 1994).

The Court believes that reconsideration under RCFC 54(b) reflects the "inherent power of the rendering [trial] court to afford such relief from interlocutory [decisions[6]] as justice requires." *Greene v. Union Mutual Life Ins. Co. of America*, 764 F.2d 19, 22 (1st Cir. 1985) (Breyer, J.) (ellipsis omitted) (internal quotation and citation omitted); *see also Jewell*, 802 F.3d at 25 (adopting the "as justice requires" standard for interlocutory decisions under Rule 54(b)); *Austin v. Kroger Texas, L.P.*, 864 F.3d 326 (5th Cir. 2017) (same); *Carlson*, 856 F.3d 320 (favorably citing the flexible *Jewell* standard); *Simone v. Monaco*, No. CV 4:19-11070-TSH, 2020 WL 1046724 (D. Mass. Mar. 4, 2020) (same).

The heightened standards of RCFC 59(a) should not be interpreted to apply to interlocutory orders for several practical reasons. For example, oral and bench orders are often issued on evidentiary and procedural matters without detailed briefing from the parties. Under RCFC 59(a), parties are forbidden from raising the same arguments later, even if they subsequently discover mandatory authority or a fact buried in the record that supports their position. *See, e.g.*, *Fru-Con Const. Corp. v. United States*, 44 Fed. Cl. 298, 301 (1999), *aff'd sub nom. Fru-Con Constr. Corp. v. United States*, 250 F.3d 762 (Fed. Cir. 2000) (a RCFC 59 "movant may not merely recapitulate 'cases and arguments considered by th[e] court before rendering its original decision.'") (citation omitted); *Parsons ex rel. Linmar Prop. Mgmt. Tr. v. United States*, 174 F. App'x 561, 563 (Fed. Cir. 2006) (explaining that in a RCFC 59 motion for reconsideration, "[l]itigants should not . . . be permitted to attempt an extensive re-trial based on evidence which was manifestly available at the time of the hearing.") (quoting *Gelco Builders & Burjay Const. Corp. v. United States*, 177 Ct. Cl. 1025, 1036–37 n. 7 (1966)); *Faust v. United States*, 79 F.3d 1167 (Fed. Cir. 1996) (same). In the same vein, under RCFC 59(a), litigants are forbidden from asserting new arguments or raising legal theories for the first time in a motion for reconsideration. *See, e.g.*, *Caldwell*, 391 F.3d at 1235–36. While this makes sense for decisions that trigger Judgments, trial court judges should not be forced to close their doors to novel theories and arguments unless the Clerk has issued Judgment and the unhappy movant is allowed to try his or her luck in the appellate court. *See Carlson*, 856 F.3d at 325 ("Compared to motions to reconsider *final* judgments pursuant to [FRCP 59], Rule 54(b)'s approach involves broader flexibility to revise *interlocutory* orders before final judgment as the litigation develops and new facts *or arguments* come to light.") (some emphasis in original, emphasis added to highlight permissibility of new arguments under RCFC 54(b)).

This is not an invitation for litigants to treat interlocutory decisions "as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *See Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988). On the contrary. The Court interprets RCFC 54(b) to afford judges of the Court of Federal Claims with greater discretion to deny motions for reconsideration that offer no good reasons to alter interlocutory decisions. As long as a decision is interlocutory, the Court possesses wide discretion to depart from or stand by it,

---

[6] Justice Breyer used the word "judgments" in a context where it is clear he meant "decisions" or "rulings" rather than formal Judgments. His choice of words mirrors the lower court decision from which he quotes. The two sentences preceding Justice Breyer's stated rule make clear that the "judgments" he believes to fall within the inherent powers of the Court include a non-final order dismissing portions of a complaint. Such is the case here.

whatever "justice requires." *Greene*, 764 F.2d at 22. There is no requirement that the Court subject itself to the stringent requirements of RCFC 59(a) for interlocutory decisions.

### B. E&I's First Motion for Reconsideration (ECF No. 47) is denied.

E&I should have brought its First Motion for Reconsideration under RCFC 54(b) as it seeks reconsideration of an order denying its Motion to Compel. That Order was interlocutory and did not trigger a judgment, thus the Court notes its vast discretion as it simply queries whether justice requires a different outcome. It does not.

E&I's Motion to Compel sought documents related to the contract between WAPA and Isolux. (Pl.'s Mot. to Compel). As the Court explained before, E&I was not a party to that contract, thus those documents cannot be relevant to show breach between E&I and another party. (Order Denying E&I's Mot. to Compel at 2–3 ("The prior contract between WAPA and Isolux was not *between the parties* in this suit. In fact, E&I does not have a previous contract with the United States.")). Otherwise, the sole utility of those documents would be to prove counts that were dismissed by Judge Bruggink in a decision the undersigned has already declined to reconsider. *E & I Glob. Energy Servs.*, 144 Fed. Cl. 508; (Order Denying Pl.'s Mot. to Am.).

E&I's plea that it recently discovered new evidence via deposition testimony from Jonathan Dittmer is unavailing. The identity of Jonathan Dittmer and the general nature of the information he possessed has been known to E&I since the inception of this litigation. (*See, e.g.*, Compl. at ¶¶ 21, 26, 27, 28, 33, 68). Nevertheless, E&I waited until the twilight of the discovery period to take Dittmer's deposition—an error in litigation strategy that the Court previously determined did not warrant an extension of the discovery period. (Order Denying Mot. for Extension of Time at 3). Despite E&I's contentions, information gathered through Dittmer's testimony was available; E&I was merely uninterested in discovering it until more than ten months after the Court's Scheduling Order opened fact discovery. (*Compare* Sched. Order, ECF No. 19 (entered Oct. 29, 2019) *with* Pl.'s Mot. for Enlargement of Fact Disc. (filed Aug. 31, 2020)). That disinterest in available information weighs heavily on whether, now, the Court should grant E&I's Motion to Reconsider, retroactively extend fact discovery for a single party, and compel the United States to produce information that E&I has previously tried and failed to convince the Court was relevant to its remaining claims. Justice does not require the United States, as an adverse litigant, to bear such a burden.

Nothing before the Court suggests justice requires reconsideration of its prior decision. If E&I remains unconvinced by this Court's reasoning in denying that motion to compel, its remedy is to seek certification and an appeal, not to bog this Court down relitigating discovery issues. E&I's First Motion for Reconsideration, (ECF No. 47), is **DENIED**.

### C. E&I's Second Motion for Reconsideration (ECF No. 48) is denied.

E&I simultaneously brings a Second Motion for Reconsideration, urging the Court to reconsider its August 29, 2019 Opinion, *E & I Glob. Energy Servs.*, 144 Fed. Cl. 508 (docketed at ECF No. 16), *and* its February 25, 2020 Order, (Order Denying Pl.'s Mot. to Am.). (Pl.'s Sec. MTR, ECF No. 48). E&I ultimately seeks to have this Court reinstate the three counts dismissed in *E & I Glob. Energy Servs.*, 144 Fed. Cl. 508, as well as to add three additional counts to the

two that remain viable. (*Id*. at 8). E&I cites no Court of Federal Claims Rule that would permit its request. Denial on that basis alone would be appropriate. However, because no judgment has been entered that pertains to either Order, the Court construes E&I's Second Motion for Reconsideration as brought pursuant to RCFC 54(b). Nevertheless, it fails.

Like its First Motion for Reconsideration, E&I's Second Motion for Reconsideration cites Jonathan Dittmer's testimony as its basis for asking the Court to essentially rewind the tape and start this litigation anew. E&I claims that "[n]ew facts and evidence have come to light," referencing Dittmer's testimony. (Pl.'s Sec. MTR at 3). E&I claims his testimony shows that the United States "had superior knowledge about the unpaid subcontractors and materialmen, and that WAPA in fact failed to fulfill its obligations pursuant to the [FAR] to verify and account for defects in workmanship and the like prior to acceptance of work completed[.]" (*Id*.).

As discussed in Section II(B) above, the evidence is only "new" to E&I but was available for them to discover from the outset of this litigation. E&I could have taken Dittmer's deposition prior to filing its Motion to Amend and made these arguments in that motion, but it strategically chose to wait until the week discovery was scheduled to close.

Even if E&I had been aware of this information sooner, the Court assumed the substance of E&I's allegations was true when it originally dismissed Counts I–III. *E & I Glob. Energy Servs.*, 144 Fed. Cl. at 510 n. 1 ("These facts are derived from the complaint and accompanying exhibits."). No "new facts and evidence" can change the Court's legal analysis of that dismissal under RCFC 12(b)(6). The Complaint alleged the United States (through WAPA) had superior knowledge of the status of payment to contractors and the equipment and materials on the site but didn't make this information known to E&I. (Compl. at ¶¶ 42–44 (Count I); ¶¶ 49–54 (Count II); ¶¶ 58 (Count III)). The Court accepted those allegations as true, but explained that WAPA did not prevent E&I from fulfilling its contractual obligations:

> [E&I] makes no claim in Counts I, II, or III that it was not paid for any of the specific Contract Line Items it contracted to perform under any of the three contracts involved. . . . WAPA did not assume any responsibilities related to Isolux's creditors in the Tender Agreement, which, as explained above, explicitly excluded WAPA from such obligations; *those obligations remained with the Sureties*.

*E & I Glob. Energy Servs.*, 144 Fed. Cl. at 513 (emphasis added) (citing to E&I's Complaint). The Court continued to explain why, even if WAPA had superior knowledge as to the outstanding obligations, WAPA could not be found to have breached the covenant of good faith and fair dealing simply because E&I voluntarily made payments it was contractually prohibited from making:

> Although the Sureties were responsible for these payments [to Isolux's creditors], [E&I] chose to ignore that language and the prohibition against making such payments without the Sureties' consent and "paid for the missing equipment, and paid the subcontractors for amounts due from Isolux," relying on the contracting officer's assurances that "any issues [would] be addressed as they come up." *We conclude that plaintiff was a*

11

> *volunteer. It chose to proceed in the absence of any contractual expectation of reimbursement from WAPA.*

*Id*. (internal citations to E&I's Complaint omitted) (emphasis added). The Court assumed the truth of E&I's allegations in concluding that E&I could not state a claim for relief under Count I (breach of the covenant of good faith and fair dealing) because there was "no contract provision to which such a covenant could attach; indeed the contract language forecloses such an argument." *Id*.

Likewise, for Counts II (fraudulent inducement) & III (misrepresentation or concealment) the Court determined that those claims could only be considered in the context of whether WAPA was in breach, but the allegations were not consistent with successful claims on those theories because E&I had already conceded that it could not have been misled:

> [E&I's] arguments also run directly counter to the contract language. It contends that the Tender Agreement was misleading and created an expectation that it would be reimbursed, but then quotes from Section 6: "Sureties will continue to fulfill their obligations under the Payment Bond and pay only those valid claims made on same." *[E&I] explains that this language "would lead any reasonable contractor to believe that it would not be responsible for paying outstanding sums due to subcontractors and suppliers from the prior terminated contract." . . . this argument answers itself.* A reasonable contractor reading this language would not be lulled into making payments to prior subcontractors. Indeed the Completion Agreement forbids such unilateral claim settlement. Thus, . . . even if WAPA violated the FAR, the contract documents unambiguously made the Sureties responsible for Isolux's debt and prohibited E & I from settling these claims.

*Id*. at 515 (internal citations to E&I's Complaint omitted) (emphasis added). The Court concluded:

> [E&I] primarily relies on the assertion, addressed above, that WAPA had superior knowledge that the agency should have shared with E&I or the Sureties. Similarly, [E&I] alleges that [the United States'] "fraud and misrepresentations relate to the contracting officer's failure to ... obtain[ ] critical knowledge of overpayments to the terminated contractor Isolux ... and [identify] what equipment and supplies were available to [E&I]" for performance under the Follow-On contract. Essentially, Counts I through III are grounded in the same assertions, but as we explain above, *the facts alleged are inconsistent with fraud or misrepresentation.*

*Id*. at 515 (internal citations to E&I's Complaint omitted) (emphasis added). Even if it could turn those "alleged" facts into established ones, Counts II & III of E&I's Complaint would fail to state a claim upon which relief could be granted because E&I has admitted it understood the contract and could not reasonably have been misled. E&I's Motion to Amend was similarly misguided and does not warrant reconsideration. The proposed amended Counts were futile as they merely repackaged allegations from already-dismissed Counts or asserted dubious legal

theories without support in this Court's caselaw.[7] Accordingly, denial of leave to amend was appropriate and the Court sees no reason to revisit that decision.

      Again, these are purely *legal* conclusions that E&I's proffer of "new facts and evidence" cannot change. In considering the United States' Motion to Dismiss Counts I–III, the Court already assumed those proffered facts were true when they were merely unproven allegations in E&I's Complaint. Furthermore, E&I's proposed amendments were futile and remain futile. There are no compelling reasons to revisit those legal conclusions. "[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (internal quotation omitted). "This rule of practice promotes the finality and efficiency of the judicial process by 'protecting against the agitation of settled issues.'" *Id.* (citation omitted). These issues are well-settled and the decisions well-reasoned in this case. If E&I disagrees with the Court's application of law, it has a remedy in the Court of Appeals for the Federal Circuit. As previously stated, the Court revisits its interlocutory decisions "as justice requires." Here, justice does not require a different result, and consequently, E&I's Second Motion for Reconsideration (ECF No. 48) is **DENIED**.

### III.    Conclusion

      RCFC 54(b), not RCFC 59, governs E&I's motions for reconsideration of interlocutory decisions. However, justice does not require the Court to reconsider any of the three prior Orders E&I seeks to reverse. Accordingly, the Court **ORDERS** the following:

    (1) E&I's First Motion for Reconsideration, (ECF No. 47), is **DENIED**.

    (2) E&I's Second Motion for Reconsideration, (ECF No. 48), is **DENIED**.

**IT IS SO ORDERED.**

s/    David A. Tapp
DAVID A. TAPP, Judge

---

[7] Even if "commercial impracticability" were recognized as an independent affirmative claim, rather than a defense to breach of contract, it sounds in tort and thus would fall outside of this Court's jurisdiction under the Tucker Act. And, as noted in its Order Denying Plaintiff's Motion to Amend, E&I provided the Court with no case law to support an "unfair trade practices" claim against the United States. In any event, that claim also appears to present a tort theory.