# In the United States Court of Federal Claims

No. 19-244C
Filed: January 10, 2022

---

**E&I GLOBAL ENERGY SERVICES, INC.,**

        *Plaintiff,*

v.

**THE UNITED STATES,**

        *Defendant.*

---

*Joseph Whitcomb*, Whitcomb, Selinsky, P.C., Denver, CO, for Plaintiff.

*Christopher L. Harlow*, Trial Attorney, *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., with whom were *Thomas Cardova*, and *Trevor Upderaff*, Western Area Power Association, Denver, CO, Of Counsel, for Defendant.

## POST-TRIAL OPINION AND ORDER

**TAPP, Judge.**

      This contract dispute stems from construction of a high voltage substation in South Dakota. Plaintiff, E&I Global Energy Services, Inc. ("E&I"), seeks damages for breach of contract. (Compl. at ¶ 36, ECF No. 1). Many issues in this case were resolved on dispositive motions. *E & I Glob. Energy Servs., Inc. v. United States*, 144 Fed. Cl. 508 (2019) (Bruggink, J., granting the United States' Motion to Dismiss Counts 1–3 for failure to state a claim); *E&I Glob. Energy Servs., Inc. v. United States*, 153 Fed. Cl. 459 (2021) (granting in part and denying in part the United States' Motion for Summary Judgment and granting the United States' Motion for Judgment on the Pleadings). Those decisions detail much of the factual and procedural history of this case.

      The remaining issues at trial were simple: whether the United States breached its contract with E&I by (1) denying E&I's request for payment on nine contract line item numbers ("CLINs") contained in Table 17 of E&I's certified claim; and (2) denying payment for Invoice No. 1422. The Court tried these issues in Sioux Falls, South Dakota on October 25, 2021. After considering the evidence presented, the Court concludes that the United States is entitled to judgment on both issues.

I.  Background and Procedural History

In March 2017, E&I entered a Completion Agreement with its sureties, Liberty Mutual Insurance Company and The Insurance Company of the State of Pennsylvania, whereby E&I agreed to complete construction of the VT Hanlon Substation at a firm-fixed price of $5,428,625.69. (Joint Stipulations of Fact ("JSOF") ¶ 1, ECF No. 85).

# VT HANLON SUBSTATION STAGE 01



*Project Specifications, Amendment 002; Solicitation No. DE-SOL-0007930 (Publicly Available)*

After entering the completion agreement, E&I's sureties tendered E&I to the Western Area Power Administration ("WAPA") as the new prime contractor for construction of the substation. (JSOF ¶ 2). In April 2017, E&I signed a Follow-On Contract with WAPA. (JSOF ¶ 3). Thirteen months later, on May 18, 2018, WAPA terminated E&I for default. (JSOF ¶ 7). Several months later, on October 1, 2018, E&I submitted a Contracts Dispute Act ("CDA") claim seeking $3,336,932.79. (JSOF ¶ 8). The Contracting Officer denied E&I's claim on December 17, 2018. (JSOF ¶ 9). This litigation ensued.

After previous disposition of many of E&I's claims, two categories of claims remain. First, E&I's Complaint, Paragraph 36(1) references a table that seeks payment for CLINs. 2, 30, 31, 32, 40, 41, 46, 47, and 48. (Compl. ¶ 36; Compl. Ex. 17). Through these CLINs, E&I seeks approximately $284,000 in breach of contract damages. (E&I Pre-trial Memo at 1, ECF No. 75). Second, E&I seeks reimbursement on Invoice No. 1422 for adding "pull wires" at a cost of $32,113.37. (*Id.*). As the Court explained in its decision partially granting summary judgment to the United States, the first claim turns on whether E&I actually performed the work that would

2

entitle it to payment under the nine CLINs, and the second claim turns on whether adding the pull wires was part of either the original fixed price contract or a change order.

E&I presented evidence on each of those issue during the single-day trial. After the close of E&I's case, the United States moved for partial judgment under RCFC 52(c) with respect to the nine CLINs. The Court took that motion under advisement and permitted the United States to present its case regarding Invoice No. 1422. The parties have each filed post-trial briefs and this case is now ripe for decision. (E&I Trial Brief, ECF No. 97; USA Trial Brief, ECF No. 96).

## II.   Findings of Fact

During trial, the Court heard testimony from only two witnesses. Jeffrey Bruce, an electrician by trade, was the president of E&I who signed and certified E&I's CDA claim.[1] (Bruce, TR at 29:17–164:4, 107:5–17). He has 34 years of experience, but the substation project was his first as a prime contractor for the Federal Government. (*Id.* at 30:3–32:25).

Jonathan Dittmer is the procurement manager and Contracting Officer for the Upper Great Plains Region of WAPA. (Dittmer, TR at 165:20–256:3). He has been a contracting officer since 1992 and oversaw numerous substation projects. (*Id.* at 166:13–167:5). WAPA assigned Mr. Dittmer as the Contracting Officer to the substation project. (*Id.* at 167:9–12). As the Contracting Officer, Mr. Dittmer first awarded the contract to Isolux Corsan, LLC ("Isolux") in 2015. (*Id.* at 167:13–15). After Isolux defaulted in 2016, Mr. Dittmer executed the Tender Agreement on behalf of WAPA to accept E&I as the new prime contractor. (*Id.* at 172:23–173:2).

### A.  CLINs. 2, 30, 31, 32, 40, 41, 46, 47, and 48

E&I submitted its certified claim seeking approximately $3.3 million. (JSOF ¶ 8). Within that claim, E&I submitted a table of CLINs with five columns, denoting the CLIN, the work or material at issue, bid price, the amount E&I invoiced, and the amount WAPA paid. (DX01 (E&I's certified claim); *see also* Compl. Ex. 17, ECF No. 1-17). E&I claimed that WAPA failed to pay $284,110.88 for work E&I invoiced as described in the table. (DX01.003; *see also* Compl. ¶ 36(1)).

For CLINs 2, 30, 31, 32, 40, 41, 46, 47, and 48 E&I invoiced $0.00 each. (DX01.009–.010; Bruce, TR at 111:7–113:9, 121:4–14). For the other 39 CLINs, E&I conceded that it had invoiced and been paid the full amount. (Bruce, TR at 124:6–11).

In the "Totals" row at the bottom, E&I stated it was paid $5,059,114.81, leaving an unpaid balance of $284,110.88. (DX01.011). However, in reviewing the table from the certified claim and recalculating on the witness stand, Mr. Bruce was unable to determine how he arrived at the $284,110.88 figure. (Bruce, TR at 116:24–120:24). Mr. Bruce speculated that the "paid amount" figures were wrong. (*Id.* at 120:11–12). Though Mr. Bruce testified that he completed

---

[1] A transcript of the trial is docketed at ECF No 94. The Court will reference the witness's name in trial citations to reflect their time on the stand, but quotations may reflect questions or statements of counsel where appropriate.

3

the work with respect to the nine CLINs, E&I offered no documents to support those bald assertions, but more importantly, those assertions are contradicted by E&I's contemporaneous documentation. (*See, e.g.*, Bruce, TR at 78:5–18 (CLIN 40), 84:13–85:5 (CLIN 2), 90:5–92:25 (CLIN 30), 93:8–25 (CLIN 31), 94:15–95:16 (CLIN 32), 95:19–97:15 (CLIN 41), 97:23–99:8 (CLIN 46), 99:9–100:16 (CLIN 47)).

E&I submitted its last invoice to WAPA on May 15, 2018. (Bruce, TR at 122:21–123:9). That invoice, Pay Application No. 13, contained a table of CLINs 1–48 with several columns, including two showing "payment this period" and "balance to finish." (DX03.057). "Balance to finish" represented the work remaining to complete performance under the listed CLIN. (Bruce, TR at 124:22–125:4). "Payment this period" represented the amount E&I billed for the listed CLIN. (*Id.* at 124:18–21). This invoice listed $0.00 in the "payment this period" column for CLINs 2, 31, 41, 47, and 48. (DX03.057). The invoice also listed a positive "balance to finish" for CLINs 2, 31, 40, 41, 46, 47, and 48, indicating work had yet to be completed for those items. (DX03.057). For CLINs 30 and 32, E&I listed the "balance to finish" as $0.00, indicating that work was complete. (DX03.057).

Mr. Dittmer testified that for many of these CLINs, E&I had not performed work to finish, though generally the work was at least 90% complete. (Dittmer, TR at 212:15–213:6 (CLIN 40), 217:24–218:7 (CLIN 2), 220:22–221:3 (CLIN 30), 221:20–222:4 (CLINs 31 & 32), 222:5–223:25 (CLIN 41), 224:6–20 (CLIN 46)). The Court finds Mr. Dittmer's testimony more credible because it is consistent with E&I's own documentary evidence regarding the completion status of the project. *See Lodge Construction, Inc. v. United States*, Case No. 13-499, __ Fed. Cl. __, slip op. at 13–14 (Fed. Cl. January 10, 2022) (discussing the hallmarks of witness credibility).

For example, on CLIN 2, Mr. Bruce testified that the gravel surfacing was complete; Mr. Dittmer testified that it was only 95% complete. (*Compare* Bruce, TR at 85:1–5 *with* Dittmer, TR at 218:1–7). Consistent with Mr. Dittmer's testimony, E&I's own documents showed that all work completed for gravel surfacing under CLIN 2 had been compensated, but roughly $8,250 worth of work remained to bring that part of the project to completion. (Bruce, TR at 124:12–125:4; DX03.057). E&I's last pay invoice shows that the parties agreed to $165,000 worth of gravel surfacing under CLIN 2; E&I completed and billed for $156,750 worth of gravel surfacing—exactly 95%. (DX03.057).

Mr. Dittmer testified that CLIN 30 was 95% complete; Mr. Bruce could not remember why he was not paid for completing 100% of the work. (Dittmer, TR at 220:22–221:3; Bruce, TR at 91:5–9). E&I's last invoice shows that 100% of the work was complete, (DX03.057), but its certified claim shows E&I did not invoice the United States for any work it asserts was uncompensated. (DX01.010).

Mr. Bruce did not believe any work remained outstanding on CLIN 31 or 32 (the service station and voltage transformers). (Bruce, TR at 93:8–25 (CLIN 31), 94:15–95:16 (CLIN 32)). However, E&I's documents show that only 85% percent of the work was completed for CLIN 31. (DX03.057). Additionally, E&I did not invoice the United States for any additional uncompensated work for either CLIN 31 or 32 according to E&I's certified claim. (DX01.010).

4

For CLIN 40, the United States contended that 90% of the work was complete, while E&I maintained that 97% of the work was complete. (Dittmer, TR at 212:15–216:17). E&I's last invoice shows that less than 95% of the work was completed for CLIN 40. (DX03.057). E&I's certified claim states that E&I billed the United States $0.00 in the final invoice, indicating that E&I did not believe that there was a discrepancy between work performed and work compensated. (DX01.010).

For CLIN 41, E&I conceded that it had not completed the work, but that the United States' assertion—that E&I was only 95% complete—overstated the amount of work remaining. (Bruce, TR at 97:11–15). E&I's last invoice showed that this work was only 95% complete. (DX03.057). E&I's certified claim confirms that E&I did not bill for the work it conceded remained incomplete. (DX01.010).

Mr. Bruce claimed CLINs 46 and 47 were complete. (Bruce, TR at 97:23–100:16). E&I's own records show otherwise with respect to CLIN 47. (DX03.057). In its certified claim, E&I did not bill the United States for any work it now claims it performed but remains uncompensated. (DX01.010). Finally, E&I conceded that the United States paid E&I all it was due for work performed pursuant to CLIN 48. (Bruce, TR at 154:5–8). For the nine CLINs at issue, E&I has not provided adequate support for its claim that it performed work for which it remains entitled to compensation.

B.  *Invoice No. 1422*

In addition to the nine CLINs, E&I's certified claim seeks $32,113.37 in compensation for Invoice No. 1422. (DX01.003, .016, .255). Through Invoice No. 1422, E&I seeks compensation for "add[ing] pull wires[.]" (DX01.016, .255). E&I claims that this work constituted a change order added after E&I signed the Follow-On Contract. (E&I Trial Brief at 1). The United States claims the documents that added the scope of work contained in Invoice No. 1422 were part of the original contract and thus compensated according to the contract award. (USA Trial Brief at 2). The ultimate factual question is whether WAPA provided E&I with the contract specifications that added the scope of work in Invoice No. 1422 prior to executing the contract with E&I.

Mr. Bruce testified that though he received an email that purported to contain Revision A, adding work related to the pull wires, he could not open the files attached to the email. (Bruce, TR at 76:24–77:9). However, Mr. Bruce could not explain how he transmitted the same files in working order to other E&I employees. (*Id.* at 132:1–134:22). But even if the Court were to accept Mr. Bruce's explanation, the evidence shows that those drawings were also publicly available prior to E&I's execution of the contract with WAPA.

In its certified claim, E&I submitted several WAPA drawings that highlighted the pull wires at issue. (DX01.269–.270). In the bottom right-hand corner of the two relevant drawings— marked VH T600-1 and VH T600-2—WAPA denoted that it "added 12/C-10 cable for each breaker[.]" (*Id.*). 12/C-10 cable refers to the pull wires in Invoice No. 1422. (Dittmer, TR at 244:4–10). That addition was noted as "Revision A," and was dated June 24, 2015. (Dittmer, TR at 246:2–25; DX01.269–.270). On July 24, 2015, WAPA issued "Amendment 002" to the

solicitation and posted that amendment on the FedBizOpps public website.[2] (DX04.001 (Amendment 002 dated June 22, 2015; effective July 24, 2015); Dittmer, TR at 248:2–249:13). Amendment 002 contained drawings VH T600-1 and VH T600-2 with Revision A. (DX04.003; DX05; Dittmer, TR at 249:13–250:15). E&I signed the follow-on contract with WAPA nearly two years later, in April 2017. (JSOF ¶ 3). Therefore, prior to E&I's contract with WAPA, the revised drawings adding pull wires to the scope of work were incorporated as part of the contract and that addition was public knowledge.

### III. Conclusions of Law

To prevail on a breach of contract claim, a party must establish: "(1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, (3) a breach of that duty, and (4) damages caused by the breach." *San Carlos Irr. & Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989). The only question in this case is whether the United States breached its duty to pay E&I for work performed pursuant to the contract. That question also turns on whether E&I actually performed the work for which it is seeking compensation. Therefore, to prevail, E&I must show, by a preponderance of the evidence, that it performed work for which it was entitled to compensation and the United States failed to pay. *See Clack v. United States*, 184 Ct. Cl. 40, 50 (1968). "Preponderance of the evidence . . . means the greater weight of evidence, evidence which is more convincing than the evidence which is offered in opposition to it." *Hale v. Dep't of Transp.*, 772 F.2d 882, 885 (Fed. Cir. 1985). However, as the Court explains, E&I failed to show that the United States breached the contract.

*A. The United States' RCFC 52(c) motion is granted with respect to the nine CLINs.*

At trial, pursuant to RCFC 52(c), the United States moved for partial judgment with respect to the nine CLINs—Nos. 2, 30, 31, 32, 40, 41, 46, 47, and 48. (Colloquy, TR at 228:3–229:24). Under RCFC 52(c), "[i]f a party has been fully heard on an issue during trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." In considering an RCFC 52(c) motion, "the judge, as the sole trier of fact, may weigh the evidence and is not required to resolve all issues of evidence and credibility in the plaintiff's favor." *Persyn v. United States*, 34 Fed. Cl. 187, 195 (1995), *aff'd*, 106 F.3d 424 (Fed. Cir. 1996). In ruling on the motion, the Court need only determine "whether or not the plaintiff has convincingly shown a right to relief." *Howard Indus., Inc. v. United States*, 126 Ct. Cl. 283, 289 (1953).

The United States asserted that E&I failed to carry its burden to support entitlement to payment for the nine CLINs. (Colloquy, TR at 228:3–12). The United States pointed out that the $284,110.88 total was unsupported by the figures for each CLIN contained therein. Mr. Bruce admitted as much. E&I's documents show the work was never completed, and E&I never

---

[2] "FedBizOpps" is a reference to FBO.gov, which has since been replaced by SAM.gov as the authoritative location for finding government contract opportunities. U.S. General Services Administration, *FBO.gov is Transitioning to beta.SAM.gov*, *available at* https://perma.cc/DFR9-UCJM.

invoiced WAPA for unpaid balances with respect to the CLINs at issue. Though Mr. Bruce testified that he believed work was complete for several of the CLINs at issue, E&I offered no credible supporting evidence showing entitlement to an unpaid balance on those nine CLINs.

Conclusory testimony alone is insufficient to entitle E&I to relief. *Edge Systems LLC v. Aguila*, 635 F. App'x 897, 12 (Fed. Cir. 2015) ("Testimony that is merely conclusory is insufficient.") (internal quotation omitted). Furthermore, it was clear from his testimony that Mr. Bruce did not know how his certified claim was calculated and could not reproduce the amount he was claiming for the nine CLINs. That amount is therefore unsubstantiated and, standing alone, cannot support E&I's claim for relief. *See Johnson v. Off. of Pers. Mgmt.*, 664 F. App'x 919, 921 n.1 (Fed. Cir. 2016) ("unsubstantiated assertions do not equal evidence.").

E&I appears to agree that it did not complete 100% of the work to finish the project, maintaining only that it completed "more than 95%" of the project. (E&I Pre-Trial Memo at 4). E&I did argue, however, that it "completed 100% of the" CLINs at issue and "is entitled to 100% payment." (*Id*.). In its pre-trial brief, E&I identified evidence it intended to produce at trial supporting entitlement to full payment for each of the CLINs at issue. However, some of this promised evidence was irrelevant to the issues for trial. For example, for CLIN 2, E&I promised evidence that Isolux had depleted the project's gravel supply prior to Isolux's termination, preventing E&I from bringing the site to grade. (*Id*. at 5–6). Proof on that issue could not change the fact that E&I cannot establish it completed work for the CLINs at issue. On other CLINs, E&I only offered the testimony of Mr. Bruce, the representative of E&I, in its attempt to show that work was performed but uncompensated. During Mr. Bruce's testimony, E&I's counsel walked through each CLIN at issue but offered no documentation or exhibits to support Mr. Bruce's assertions. (Bruce, TR at 78:5–100:16). The only other witness, Mr. Dittmer, contradicted Mr. Bruce's testimony. Setting aside Mr. Bruce's testimony, E&I failed to produce any supporting evidence whatsoever for the assertion that the United States breached its contract with E&I by failing to provide compensation for the work E&I performed. Additionally, the documents that were introduced—*E&I's own records*—tend to contradict Mr. Bruce's testimony.

Therefore, the Court concludes that E&I cannot meet its burden to show the United States breached a contractual duty by declining to pay E&I for CLINs 2, 30, 31, 32, 40, 41, 46, 47, and 48. Consequently, the United States is entitled to judgment with respect to those nine CLINs.

   B.  *The United States is entitled to judgment with respect to Invoice No. 1422.*

As a basic exercise of good business judgment, government contractors are expected to read the entire solicitation for which they submit a bid. *Liebherr Crane Corp. v. United States*, 810 F.2d 1153, 1157–58 (Fed. Cir. 1987) (holding that reading only part of the solicitation constituted one of several "serious errors in business judgment"); *Giesler v. United States*, 232 F.3d 864, 870 (Fed. Cir. 2000) (government contractor committed "gross negligence in failing to read the specification[.]"). Indeed, as the Court explained at length in its prior opinion, E&I warranted that it had reviewed the solicitation and all amendments prior to entering the Completion Agreement with its sureties. *E&I Glob. Energy Servs., Inc.*, 153 Fed. Cl. at 470–71 (citing Completion Agreement § 14) ("According to the terms of the Completion Agreement, E&I warranted that it had examined 'all amendments [and] addenda' and had 'informed itself with respect to those items required to complete' the project."). The Completion Agreement,

along with E&I's warranty, was then incorporated as part of E&I's Follow-On Contract with WAPA. *Id*. at 464.

WAPA issued Amendment 002 prior to the solicitation of bids and prior to E&I's execution of the completion contract with WAPA. (*Compare* DX04 (effective July 24, 2015) *with* JSOF ¶ 3 (E&I executed the Follow-On Contract in April 2017)). Amendment 002 expressly incorporated the revised drawings that included the addition of 12/C-10 pull wires—the subject of Invoice No. 1422. WAPA provided those revised drawings directly to E&I in addition to posting them publicly on the government's federal contracts online portal. E&I readily admits that if it had received the relevant drawings prior to signing the construction contract, "E&I is not entitled to payment on Invoice [No.] 1422." (E&I Trial Brief at 5). Though E&I argues it was unable to access the drawings sent via email, (E&I Trial Brief at 6), an assertion the Court does not fully accept,[3] in executing the Completion Agreement, E&I warranted that it had reviewed all amendments. E&I protests that WAPA promised to provide the updated drawings via compact disks rather than via email. (*Id*.). While that may well be true, it is without consequence. E&I was or should have been on alert that the contract included revised drawings. It had both a legal and a contractual responsibility to read the solicitation and all amendments prior to executing the Completion Agreement. It represented that it did so. The Court has no basis to conclude that E&I's representation was meant to exclude Amendment 002, which was publicly posted nearly two years prior to E&I's execution of the Completion Agreement and Follow-On Contract.

Therefore, the Court concludes that Invoice No. 1422 seeks compensation for items that were included in the solicitation, not part of a change order. Consequently, the United States is entitled to judgment with respect to Invoice No. 1422.

### IV. Decision and Order of Judgment

E&I shoulders the burden to prove that the United States breached the contract at issue here. *Clack*, 184 Ct. Cl. at 50. But at trial, E&I failed to establish that it either performed the work entitling it to compensation or that the United States failed to pay compensation E&I was due for the nine CLINs. Likewise, E&I has not established that Invoice No. 1422 was a change order rather than within the scope of the terms of the Follow-On Contract. Therefore, E&I cannot establish a breach of contract. Accordingly, the Court orders the following:

(1) The United States motion for judgment under RCFC 52(c) is **GRANTED**.

(2) The Court **FINDS AND CONCLUDES** that the United States did not breach its contract with E&I.

---

[3] E&I maintains it was unable to access the drawings it received by email. E&I did not attempt to corroborate that assertion with testimony from other employees, metadata from the email, or any other sources of evidence that would suggest the email attachments were inaccessible. Additionally, Mr. Bruce could not explain how he transmitted the same files in working order to other E&I employees. (Bruce, TR at 132:1–134:22).

(3) The Clerk is **DIRECTED** to enter judgment for the United States. No costs awarded.

**IT IS SO ORDERED.**



s/      David A. Tapp
DAVID A. TAPP, Judge